## A01A2234. TEMPLE v. THE STATE.
(561 SE2d 132)

SMITH, Presiding Judge.

Texaco Temple was convicted by a jury on three counts of aggravated assault and one count of possession of a firearm by a convicted felon. His motion for new trial was denied. Temple appeals, contending that the evidence was insufficient to support the verdicts, that he did not receive effective assistance of counsel, and that the trial court erroneously refused to grant his motions for mistrial when his character was placed in issue by the State. We find no reversible error, and we affirm.

1. We first address Temple's claim concerning the sufficiency of the evidence. Construed to uphold the jury's verdict, evidence was presented that while the three victims were traveling in a car at approximately 10:30 p.m., the driver looked into his rearview mirror and saw a vehicle swerving into another lane. As he slowed to approach a stop sign, his car was rear-ended. The impact caused the car to spin and come to a rest partially in a ditch. The driver testified that following the impact, he heard "some shots fired" and found himself "looking down the barrel of a pistol. And the guy that was pointing the pistol said he was going to kill everybody in the car." The driver unequivocally identified Temple, with whom he had been acquainted before the incident, as the man who pointed the gun and threatened the three victims. He testified that Temple shot at two tires, "but the tires didn't go down." Another man with Temple attempted to knock the gun away from the victims, and the gun fired again.

Meanwhile, the victim in the backseat on the passenger side, who testified that the gun was pointed inside the driver's window and that the man holding the gun stated that he was "going to kill all of y'all," decided to exit the car. He "wasn't going to just sit in that car and get shot just like that." He jumped out of the car and saw that "the gun was on me." According to this victim, as the man with the

gun was coming around the car toward him, the front seat passenger, a female, exited the car and said, "'You mad with me.'" The same male victim was relieved at that time to see the blue lights of a police car approaching. He testified that the other man accompanying the individual with the gun stayed on the scene for a short time during the ensuing investigation and helped pull the car from the ditch. The driver testified that when the police car arrived, Temple "threw the gun in the bushes" and ran into the woods.

Deputy John Glandon arrived at the scene as Temple fled. Glandon testified that while on routine patrol, he observed two cars in ditches on opposite sides of the road. Just after he radioed dispatch to report the accident, he heard two gunshots and saw a figure run into the woods. Glandon called for assistance and then approached and interviewed the four people he observed standing near one of the wrecked vehicles. He assumed that all four were victims but later learned that one of the four individuals, Anthony James, had been in the car with Temple. James gave him a name and address, which he later learned were false, but James disappeared before the investigation was complete.

Glandon learned from the victims that they had been rear-ended and that the person who "had ran [sic] into the woods had pulled a gun and shot at them." He searched the other car and found a rental agreement bearing Temple's name. A short time later, while Glandon was inside his patrol car, he saw "Temple standing just behind the driver's door." Glandon exited the car and "laid hands" on Temple because he "was afraid he still had the weapon." As soon as Glandon did so, Temple stated "that he knew he had [done] wrong, but he had sold him bad drugs." Temple did not indicate to Glandon the name of the person to whom he was referring. No weapon was found on Temple's person, and during a subsequent custodial interview, he denied knowing anything about a shooting. He said that the man with him, whom he could not identify, "probably did the shooting." A pistol, two spent rounds, and at least one live round were recovered approximately twenty to thirty feet from the victims' car. Glandon acknowledged on cross-examination that James, the man accompanying Temple, could have been the person driving the car but did not find it likely that James was the person who shot the gun. He testified that the victims did not "act as though [James] had just shot at them. They were standing around very calm. I would have thought they'd had a better reaction if he was the one that had shot at them."

We do not agree with Temple that the evidence was not sufficient to support the three aggravated assault verdicts. In addition to Temple's incriminating statement to Glandon, the driver unequivocally identified Temple as the man who pointed a gun at the victims and threatened to shoot all of them. Temple contends that because the female victim did not testify, the State failed to present sufficient cir-

cumstantial evidence to prove that she was in fear of receiving an imminent violent injury. Indeed, when the evidence in a criminal case is entirely circumstantial, as it was with regard to the count charging Temple with aggravated assault against the female victim, a conviction can be sustained only if the facts proved by the State are consistent with the hypothesis of guilt and exclude every other reasonable hypothesis except the guilt of the accused. *Barela v. State*, 271 Ga. 169, 171 (517 SE2d 321) (1999). But

> it is not necessary for circumstantial evidence to exclude every *conceivable* hypothesis of a defendant's innocence in order to authorize a conviction; only *reasonable* hypotheses must be excluded. In cases based upon circumstantial evidence, questions concerning the exclusion of all reasonable hypotheses other than guilt are generally left to the jury, and when the evidence is sufficient to have enabled reasonable jurors to exclude all reasonable hypotheses except an accused's guilt, that conclusion will not be disturbed on appeal unless it is unsupportable as a matter of law.

(Footnote omitted; emphasis in original.) Id. at 171-172. See also *Smith v. State*, 234 Ga. App. 586, 594 (7) (b) (506 SE2d 406) (1998).

Here, two of the victims *did* testify. One stated that after he heard the gunfire and saw a man waving and shooting the gun, he was "in a panic" and thought that they all were going to be shot and that the man repeatedly said he "was going to kill up" everyone. And the driver similarly testified concerning Temple's threats and stated that he believed he would be the first to die, because Temple was on his side of the car when the first shots were fired. Although the female victim did not testify, and although testimony was presented that she exited the car and spoke to Temple, given the testimony of the other two victims concerning Temple's actions and their own fears, we conclude that a rational trier of fact could have concluded that the evidence excluded every reasonable hypothesis other than that the female victim was frightened for her safety as well. We therefore will not disturb Temple's conviction.

Finally, we note that a certified copy of Temple's felony conviction for possession of cocaine was tendered and admitted into evidence without objection. Consequently, given the direct testimony by the driver, the evidence was sufficient to support his conviction on the charge of possession of a firearm by a convicted felon.

2. Temple contends that he was denied effective assistance of counsel because his trial attorney failed to request a bifurcated trial on the charge of possession of a firearm by a convicted felon and failed to introduce evidence that Temple passed a gunshot residue test.

(a) With respect to trial counsel's failure to request a bifurcated trial, Temple correctly points out that *Head v. State*, 253 Ga. 429 (322 SE2d 228) (1984), states that a trial judge "shall bifurcate" the proceedings if the charge of possession of a firearm by a convicted felon is unrelated to any other count of the indictment. Id. at 431-432 (3) (a). But bifurcation is required only "on motion" by the defendant. Id. See also *Belt v. State*, 225 Ga. App. 813, 814 (2) (a) (485 SE2d 39) (1997). Here, trial counsel did not interpose an objection to the prosecutor's statement to the trial court that bifurcation was not required, and Temple contends this constituted ineffective assistance of counsel.

Temple has not met his burden of showing ineffectiveness. To do so, a defendant must show that trial counsel's performance was deficient and that this deficiency prejudiced his or her defense. *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984). See also *Baker v. State*, 251 Ga. App. 377, 378 (2) (554 SE2d 324) (2001). And the defendant attempting to show ineffectiveness "must overcome the strong presumption that counsel's conduct falls within the broad range of reasonable professional conduct." (Footnote omitted.) Id. at 379 (2). Here, the hearing on Temple's motion for new trial was not transcribed, and we cannot determine whether his trial counsel testified concerning his trial strategy. Without such testimony, in the absence of other evidence that trial counsel's performance was deficient, "the trial court is to presume that trial counsel's actions are part of trial strategy." (Footnote omitted.) Id. In the absence of trial counsel's testimony, "it is extremely difficult to overcome this presumption." (Citation omitted.) *Rivers v. State*, 271 Ga. 115, 117 (2) (516 SE2d 525) (1999).

Apparently "[r]ecognizing that trial strategy and tactics do not equate with ineffective assistance," (Footnote omitted.) *Baker*, supra at 378 (2), Temple argues that "there is no conceivable reason trial counsel would not want to bifurcate the trial. It is not trial tactics or strategy to allow the jury to hear about a defendant's prior convictions." We do not agree. Some evidence was presented showing the prior cocaine conviction to be related to the charged crimes; Temple told Glandon that he knew he had done wrong but that someone, presumably one of the occupants of the other car, had sold him "bad drugs." Trial counsel could have determined that the conviction may have served to corroborate evidence that the assaults here resulted from a sour drug deal and that a motion to bifurcate would have been denied. But we do not have the benefit of trial counsel's testimony concerning his trial strategy. Therefore, we simply must presume that any decision concerning bifurcation was one of trial tactics and did not constitute deficient performance. *Rivers*, supra; *Baker*, supra.

Moreover, we note that one victim unequivocally identified Temple as the assailant who fled into the woods after the gunshots. This

evidence was corroborated by Glandon, who testified concerning Temple's incriminating statement made shortly after the attacks, and by one of the other victims, who did not identify Temple but whose testimony also showed that the victims were threatened with death by the attacker and that the attacker ran into the woods. Under these circumstances, we conclude that the prior conviction did not place Temple's character into issue to the extent that the evidence of the prior conviction affected the verdict on the aggravated assault charges. See *Baker v. State*, 214 Ga. App. 640 (1) (448 SE2d 745) (1994).

(b) We find no merit in Temple's argument concerning trial counsel's failure to introduce evidence that he passed a gunshot residue test. He has pointed to no evidence of record showing this fact to be true, but instead merely states in his appellate brief that "there was evidence that a gunshot residue analysis was performed on Appellant's hands shortly after the alleged shooting" and that this test did not show the presence of gunshot residue. It is axiomatic that factual assertions in appellate briefs not supported by record evidence will not be considered on appeal. See, e.g., *Vanegas v. State*, 249 Ga. App. 76, 78-79 (2) (547 SE2d 718) (2001). And again, given Temple's failure to introduce testimony of his trial counsel, we assume that any decision not to introduce such evidence, if it existed, was a matter of trial strategy and tactics. See *Rivers*, supra; *Baker*, supra, 251 Ga. App. at 378 (2).

3. Temple argues that the trial court erroneously refused to grant his repeated motions for mistrial made after the State placed his character in issue. In general, two instances of trial testimony form the basis of this contention. The first involves Glandon's testimony that when he placed his hands on Temple, Temple spontaneously stated "that he knew he had [done] wrong, but he had sold him bad drugs." He argues that testimony concerning his purchase of drugs had no probative value and erroneously placed his character in issue. We do not agree. This spontaneous statement was made close in time to the shooting, was relevant to Temple's possible motive, and was evidence of "the circumstances surrounding the commission of the crime or crimes charged." (Citations and punctuation omitted.) *Houston v. State*, 187 Ga. App. 335, 340 (5) (370 SE2d 178) (1988). It was consequently admissible as part of the res gestae, OCGA § 24-3-3, although it may have incidentally placed Temple's character in evidence. Id. See also *Larkin v. State*, 230 Ga. App. 129, 130-131 (2) (495 SE2d 605) (1998).

Temple also complains about Glandon's testimony given after the prosecutor asked Glandon how he felt when he first observed Temple. He replied that this "was probably the most scared I've ever been" and that he recognized Temple "from previous encounters." He also testified that he had previously worked as a shift sergeant at the

jail. Although this testimony possibly may have placed Temple's character in issue, we find no reversible error in the trial court's refusal to grant Temple's motion for mistrial. First, as pointed out by the trial court, Glandon did not specifically testify that he recognized Temple as a result of his work at the jail. But even if this inference was implied by the testimony, evidence of Temple's previous conviction was properly admitted, as discussed above. Any testimony that he may have been in jail previously was therefore cumulative and harmless. See generally *Davidson v. State*, 231 Ga. App. 605, 611-612 (5) (c) (499 SE2d 697) (1998).

Finally, we note Temple's argument that certain "gratuitous" or "personal" comments by the prosecutor warranted mistrial. Following these comments, the trial court rebuked the prosecutor and denied Temple's motions for mistrial. We find no reversible error. Temple has not shown how the prosecutor's brief comments impermissibly placed his character in issue or otherwise contributed to the verdict.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED FEBRUARY 7, 2002.

*Todd H. Martin*, for appellant.
*J. Thomas Durden, Jr., District Attorney, Henry P. Smith, Assistant District Attorney*, for appellee.