A05A0498. MOORE v. THE STATE.
(618 SE2d 122)

ADAMS, Judge.

Shirley Moore was charged with armed robbery, aggravated assault, possession of a firearm during the commission of a crime, and possession of a firearm by a convicted felon in connection with the holdup of a Clay County convenience store. A jury found her guilty of armed robbery and possession of a firearm by a convicted felon, but acquitted her on the other charges. She appeals following the denial of her motion for new trial, asserting that the evidence was insufficient to support her convictions and that the trial court erred in determining that she received effective assistance of counsel. We affirm.

In considering Moore's appeal, we construe the evidence in the light most favorable to the verdict, and Moore no longer enjoys a presumption of innocence. We determine only the legal sufficiency of the evidence adduced below and do not weigh the evidence or assess the credibility of the witnesses. *Brown v. State*, 265 Ga. App. 613 (594 SE2d 770) (2004). Viewed in that light, the evidence shows that sometime before 6:00 p.m. on March 9, 1999, Moore entered Tommy's Fish Center. She walked around the store, picked up a couple of snacks and asked the store clerk, Tracy Nichols, where to find the "cheap sodas." Moore subsequently paid for her purchase and left the store. Belle Young, another store employee was also in the store while Moore was there. She left immediately after Moore, leaving Nichols alone in the store. As she left the store, Young saw three men sitting in a white Oldsmobile or Chevrolet automobile.

Around ten minutes later, two young men came into the store where Nichols was still alone. As one of the men walked to the back of the store, the other walked to the front of the store, demanded money and then shot Nichols in the chest. The men took approximately $400 from the cash register and left.

Clay County Sheriff Roger Shivers responded to a call reporting the shooting. On the way to the store, Shivers met a Chevrolet or Pontiac automobile traveling in the opposite direction at a high rate of speed. The two vehicles almost collided in a turn when the automobile swerved and the sheriff swerved to avoid him. The sheriff noticed as he passed that the driver of the other car had a "deer in the headlights" look on his face.

A few days later, Nichols identified two individuals from a photo lineup as the men she believed had committed the crimes, and the two men, Maurice Slater and Detrius Jones, were subsequently questioned about the incident. Slater and Jones gave alibis, which police discovered were false, as well as other inaccurate information. The two were subsequently arrested and charged with the crime. Several months later, Slater's defense attorney notified the prosecutor that he had a witness who could provide information that would clear Slater and Jones. The witness was Moore, who at the time was incarcerated at Pulaski State Prison.

The prosecutor along with a Georgia Bureau of Investigation (GBI) agent and Slater's and Jones's defense attorneys went to the prison to interview Moore. Moore initially asked whether her sentence would be reduced if she gave a statement. The GBI agent responded that they could not help reduce her sentence, but encouraged her to do "the right thing." Moore subsequently agreed to talk and told the interviewers that she and Carlton Ellis were together when they were approached by Steve Williams and Dameon Williams who asked for a ride. She said that she went with Ellis and the two other men to the convenience store where she went in and made a purchase. Moore said that Steve and Dameon Williams then got out of the car and stayed behind while she and Ellis left to go shopping at a clothing store. Moore could not recall what she bought there. They purchased some groceries at another store and returned home, without seeing the Williamses again that day. Moore stated that approximately two weeks later she saw Steve Williams at a party at his mother's house. He was in the backyard shooting a silver pistol. She said that Steve Williams told her that he had robbed the store and shot Nichols. Moore denied any involvement in the robbery or shooting.

The prosecutor and the GBI agent later interviewed Ellis, Steve Williams and Dameon Williams, who each admitted his participation in the crime. But each of the men also stated that the idea to rob the store had been Moore's. The investigators then went back to interview Moore again. In this interview, Moore was advised of her *Miranda* rights. In her second statement, which she put in writing, Moore stated that Ellis needed money and told Steve and Dameon Williams that Ellis would pay them to rob the store. The four then

went to the store, where Moore went inside at Ellis's urging to see how many people were in the store. She purchased something and returned to the car to tell the others who was inside. Moore said that Ellis and she left the other two at the store, but picked them up later as they were running down the road. She said that they had a flat tire after they left the store and stopped at a church to fix it. While they were there, Ellis threw the gun into the woods.

Moore, Ellis, Steve Williams and Dameon Williams were all indicted for armed robbery, aggravated assault and possession of a firearm during the commission of a crime. Moore was also indicted for possession of a firearm by a convicted felon. Ellis, Steve Williams and Dameon Williams each pled guilty to robbery and were each sentenced to twenty years.

Ellis testified at trial that he and Moore were together at her trailer on the day of the crime when Moore asked Steve and Dameon Williams if they wanted to make some money. When they said yes, Moore told them that she knew of a store that they could rob. They then traveled to Tommy's Fish Center where Moore went into the store to buy something. After Moore returned to the car, they all left and drove around for a while. They returned to the store where Ellis said that Steve and Dameon Williams went into the store to rob it. Ellis said that they used his gun, which was in the car. Ellis and Moore drove away, but turned around to pick up Steve and Dameon Williams, who came running down the road. Steve Williams told them that he had shot the lady in the store because she would not give him the money. On the way back to Moore's trailer, Ellis said that they passed a police vehicle with its lights flashing in a sharp curve of the road. On the way home, they had a flat tire which they stopped to fix. While they were stopped, someone threw the gun away. Ellis said that Moore divided the money from the robbery among the four of them.

Dameon Williams testified that he went with Ellis, Moore and Steve Williams to the store on the day of the crime. Moore went into the store and they drove up the road, but turned around and came back "to do the crime." Dameon testified that Steve Williams and he went in to rob the store. Steve Williams demanded money, and when the clerk did not give it to him, he shot her. Afterward, Steve Williams grabbed the money from the cash register and they both left the store. As they were running up the road, they were picked up by Ellis and Moore. Moore split the money among them. Dameon also recounted the incident about stopping at a church to fix the flat tire.

Steve Williams testified that on the day of the crime, Moore asked him if he wanted to make some money. When Steve said, "yes," Moore told him that they could rob a store she knew where an old lady worked by herself. He said that Moore got some gloves and masks, and Ellis gave him a gun. When they got to the store, they waited for

some people to leave the area, and he and Dameon went into the store to rob it, while Ellis and Moore drove away. Steve Williams said that he demanded money from the clerk. When she did not give it to him, he shot her. He then took the money from the cash register and ran out of the store with Dameon. Ellis and Moore picked them up and he gave the money to Moore, who divided it among the four of them. Steve Williams said that they had to stop at a church to fix a flat tire, and while they were there, he threw the gun away.

Police recovered the gun and Ellis positively identified it at trial. The state presented an expert witness who testified that the bullet taken from Nichols's body was "probably" fired from Ellis's gun and that she saw no evidence inconsistent with that conclusion. But the expert could not definitively state that the bullet was fired from the gun.

Moore testified that she went to the store with the others on the day of the robbery, but said that she went without knowing of the plan to commit robbery. She thought they were going to the store to cash food stamps. She said that while she was inside she asked for the cheap sodas. She made her purchases and left. After Moore got into the car, Ellis drove away, but turned around and went back to the store, where Steve and Dameon Williams got out of the car. Moore said that the first time she became aware of the plan to rob the store was when she saw Ellis hand Steve Williams the gun. She and Ellis drove off, while she tried to get Ellis to stop the others from robbing the store. They turned around and picked up Steve and Dameon Williams who were running down the road. She admitted that Steve Williams handed her the money from the robbery and that she divided it up. She also described the incident involving the flat tire and stated that they discarded the gun while at the church to fix the tire.

1. Moore first contends that this evidence was insufficient to support her robbery conviction. But the record contains ample evidence from which the jury could have determined that Moore initiated the idea of robbing the store knowing that the clerk worked alone. The statements of her three accomplices corroborated each other and there is at least slight additional evidence to corroborate those statements. See *Finley v. State*, 252 Ga. App. 66, 67-68 (2) (555 SE2d 523) (2001). For example, Moore admitted that she had been to the store before to cash food stamps, and the evidence showed that Moore entered the store and returned to the car to join the others. Moreover, Moore admitted in her second statement to police that she went into the store to see how many people were inside and reported back to the others. Although she later recanted this statement, the jury could still consider it as evidence. "[E]ven though a witness may recant on the stand, his prior inconsistent statements constitute

substantive evidence on which the jury may rely." (Footnote omitted.) *Gunsby v. State*, 248 Ga. App. 18 (1) (545 SE2d 56) (2001). Also by her own admission, she accepted from Steve Williams what she knew to be the proceeds of the robbery and divided it up. There was evidence that she kept a portion of those proceeds for herself.

Under OCGA § 16-2-20 (a), "[e]very person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime." We find that the evidence was sufficient for the jury to determine that Moore was guilty of aiding and abetting in the crime of robbery beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); OCGA § 16-2-20 (b). See also *Botelho v. State*, 268 Ga. App. 129, 130-131 (1) (601 SE2d 494) (2004); *Collins v. State*, 229 Ga. App. 210, 211 (1) (a) (493 SE2d 592) (1997).

2. Moore next contends that her trial attorney rendered ineffective assistance of counsel on three grounds: (a) by stipulating that Moore was a convicted felon; (b) by failing to request a bifurcated trial; and (c) by failing to move for a change of venue.

In determining whether a defendant received ineffective assistance of counsel, courts apply "the two-prong test set forth in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984), under which the convicted defendant is required to show both that counsel's performance was deficient and that the deficiency prejudiced the defense." (Citation and punctuation omitted.) *Morton v. State*, 265 Ga. App. 421, 422 (1) (594 SE2d 664) (2004). And we will affirm the trial court's determination that the defendant received effective assistance of counsel unless it is clearly erroneous. *Botelho v. State*, 268 Ga. App. at 132 (3).

(a) Moore asserts that her trial attorney was ineffective in stipulating to the fact that she was a convicted felon because it placed her character at issue. At the hearing on the motion for new trial, Moore's trial attorney was asked whether he recalled making this stipulation, but he was never asked why he made it. In the absence of direct testimony explaining a reason for the agreement to stipulate to the conviction, a presumption arises that "trial counsel's actions are part of trial strategy," and "it is extremely difficult to overcome this presumption." (Citations and punctuation omitted.) *Temple v. State*, 253 Ga. App. 606, 609 (2) (a) (561 SE2d 132) (2002).

Moreover, the record demonstrates that this stipulation may have been part of an overall trial strategy. Moore's attorney made a motion in limine to exclude any reference to her being in prison at the time she made her statements to police. And Moore's counsel stipulated to the prior conviction with the explicit understanding that the indictment for the prior conviction of false swearing would not go out to the jury with the other evidence. Moore's attorney apparently was

concerned that the indictment could lead to the jury's discovery that Moore had more than one prior felony conviction because the indictment showed that she received only a probated sentence for the false swearing. If Moore's motion in limine were not granted, the possibility existed that the jury would learn that she was in prison on a separate charge of forgery.

This evidence supports the presumption that the stipulation was a product of trial strategy, and such a decision provides no basis for a finding of ineffective assistance of counsel. *London v. State*, 260 Ga. App. 780, 784 (6) (580 SE2d 686) (2003). "[T]rial strategy and tactics do not equate with ineffective assistance." (Citations and punctuation omitted.) *Temple v. State*, 253 Ga. App. at 609 (2) (a).

(b) Moore also raises the related argument that her trial counsel was ineffective in failing to request bifurcation of the charge of possession of a firearm by a convicted felon from the remainder of the charges. She asserts that this omission unfairly put her character into issue as it led to the introduction of evidence that she had previously been convicted of false swearing. She contends that this evidence affected the jury's perception of her credibility and unfairly bolstered the testimony of the other three individuals who tried to "finger [her] as the mastermind of the robbery."

At the motion hearing, however, Moore's trial attorney was asked about severing the charges, and was not specifically asked about the issue of bifurcating the trial. He testified that although he did not discuss the issue with Moore, the decision not to seek severance was one of "trial procedure," by which he presumably meant "trial strategy." He explained that moving to sever may have been consistent with her defense that she was unaware of the others' intent to commit robbery, but a downside was that if she was acquitted in the first trial, she still ran the risk of being convicted on the possession of a firearm by a convicted felon charge in a second trial. Thus, the attorney was apparently addressing the issue of seeking two separate trials on the charges, not splitting one trial into two parts. Accordingly, we are left with the presumption that his decision not to seek bifurcation was also one of trial strategy. *Temple v. State*, 253 Ga. App. at 609 (2) (a). And while Moore's current attorney may have pursued a different strategy with regard to bifurcation, "the fact that [Moore] and [her] present counsel disagree with the decisions made by trial counsel does not require a finding that defendant's original representation was inadequate." (Citation and punctuation omitted.) *Aleman v. State*, 227 Ga. App. 607, 612 (3) (b) (489 SE2d 867) (1997). See also *London v. State*, 260 Ga. App. at 784 (7).

Moreover, we note that the evidence clearly showed that Moore made conflicting statements to the police. On cross-examination, she

admitted that she lied in her statements on a number of points, conceding that at least on one occasion she told police what the assistant district attorney characterized as "a deliberate falsehood." We find that Moore has failed to show, in light of her admission to lying to police, a reasonable probability that the outcome of her trial would have been different if her attorney had either not stipulated to her prior false swearing conviction or had moved for bifurcation. Accordingly, we find that Moore has failed to carry her burden under *Strickland v. Washington* on these grounds.

(c) Moore further contends that her trial attorney was ineffective in failing to move for a change of venue. Moore's trial attorney testified, however, that he did not recall an overwhelming amount of media coverage on the case nor a large number of spectators at the trial. Further, while he could not recall whether any jurors were dismissed for cause, he stated that he was satisfied with the jury as seated and noted that the jurors acquitted Moore of two of the charges against her. He said that if he had had problems with the jury selection process, he would have moved for a change of venue. And we note that Moore did not present any evidence at the motion hearing of any pre-trial publicity or any other evidence to show that the jury could have been unfairly tainted or biased. "Under those circumstances, there being no evidence the trial's setting was inherently prejudicial or the jury selection process showed actual prejudice to a degree that rendered a fair trial impossible, [Moore] has not shown the failure to seek a change of venue constituted ineffective assistance of counsel." (Citation omitted.) *Williams v. State*, 277 Ga. 853, 858-859 (6) (d) (596 SE2d 597) (2004).

*Judgment affirmed. Smith, P. J., and Ellington, J., concur.*

DECIDED JULY 14, 2005.

*Billy M. Grantham*, for appellant.
*Charles M. Ferguson, District Attorney, Thomas C. Earnest, Assistant District Attorney*, for appellee.