A05A2111. JORDAN v. THE STATE.

(628 SE2d 221)

PHIPPS, Judge.

Rongey Jordan was tried by a jury and convicted of burglary, two counts of armed robbery, possession of a firearm during the commission of a crime and possession of a firearm by a convicted felon. He claims that the evidence was insufficient to support the verdict, that the court erred in charging the jury and that the court erred by admitting similar transaction evidence. For reasons that follow, we affirm.

Viewed in the light most favorable to the jury's verdict, the evidence showed that on February 7, 2002, two men forced their way into Victoria Earl's apartment and robbed Earl and John Williams at gunpoint. Earl testified that around 9:00 or 9:30 p.m. someone knocked on her apartment door and that when she opened it, a young man, whom she identified as Jordan, put a pistol in her face and demanded all of her money. He then reached into her pocket and took approximately $300. At that point, another man, whom she referred to as her grandson, entered the apartment and Jordan told her to lie on the floor. Williams testified that he tried to grab the second male

---

when he came in and the first male said, "shoot the M. F." Earl told them not to shoot Williams and Jordan responded, "shut up, bitch." Williams then noticed that both men had guns and stepped back. Williams testified that the second male instructed him to lie on the floor and that when he complied, the man took his billfold. Both men then left. Williams testified that immediately after the men left, Earl told him that they had been robbed by someone she referred to as her grandson and his friend, "Red" or "Red Boy."

Earl testified that both men were wearing ski masks with holes that revealed their eyes, noses and mouths. E. G., whom Earl referred to as her grandson, is not actually her grandson but a young man who came by her house occasionally to whom she would give sodas and money or food. Earl testified that Jordan, whom she referred to as "Red," had been to her house a few times with E. G. and that she had given him sodas, but not money. Earl testified that she was able to identify Jordan and E. G. even though they were wearing ski masks. Earl testified that there was no doubt in her mind that Jordan was the young man who robbed her the night of February 7.

After reporting the robbery to the police, Earl told her neighbor across the street and other people that she and Williams had been robbed and named the robbers. The next morning, Earl saw Jordan and E. G. near her apartment wearing the same clothes they had been wearing the night before. She called the police, got in her truck and followed them. Police officers caught Jordan and took him into custody, but E. G. ran away. Earl identified the clothes that Jordan had worn the night of the robbery and the next morning. When Jordan was arrested, he was carrying $105.96 in cash.

E. G. turned himself in to police officers days later and gave a statement on February 9, 2002. Detective Barry Davis of the Columbus Police Department testified that he took the statement, which he then read at trial. After being advised of his *Miranda* rights, E. G. stated that he and his friend Jordan were at his mother's house snorting cocaine one night and decided they needed money for more cocaine. They went to an apartment and E. G. knocked on the door. When a woman opened it, Jordan put a gun to her head and she got on the floor. She gave her money to Jordan and a man who was there gave his wallet to Jordan. E. G. and Jordan then left. They got about $200 and split it. E. G. denied that he ever had a gun. Davis testified that E. G. did not appear to be under the influence of drugs at the time he gave the statement.

At trial, E. G. admitted that he had pled guilty to armed robbery charges and that he had given a statement to Davis and had written letters to the former prosecutor explaining his involvement in the crimes. In those letters, which he read at trial, E. G. wrote that Jordan had forced him to participate in the robbery and explained

that Jordan had run into the apartment with a gun, forced the couple inside to give him money, threatened to kill them and then left. He testified at trial that his statement to Davis and his letters to the prosecutor were not true and that he had said that Jordan was involved because he and Jordan had had an argument and he knew Jordan had already been arrested.

1. Jordan claims that the evidence was insufficient to support the verdict because E. G.'s pretrial statement was not corroborated, E. G. contradicted that statement at trial and Earl's trial testimony regarding her identification of Jordan was inconsistent with her testimony at Jordan's probation revocation hearing.

On appeal from a criminal conviction, the evidence must be viewed in the light most favorable to the verdict and the appellant no longer enjoys a presumption of innocence.[1] We do not weigh evidence or determine witness credibility.[2]

Jordan relies on OCGA § 24-4-8, which provides that in felony cases where the only witness is an accomplice, the testimony of a single witness is not sufficient to establish a fact. But here the accomplice was not the only witness to provide evidence of Jordan's involvement in the robbery. Earl testified that she knew E. G. and Jordan and that she recognized both of them at the time of the robbery and the next morning when Jordan was arrested. Williams testified that Earl told him who had robbed them immediately after it happened.[3] Earl also identified the clothes Jordan had worn during the robbery. Both Earl and Williams testified that Jordan used a gun during the robbery. Thus, even without E. G.'s pretrial statement, the state presented direct and circumstantial evidence of Jordan's participation in the robbery.

Jordan claims that Earl's trial testimony was inconsistent with her testimony at his probation revocation hearing and that her identification of him the day after the robbery was not credible because it was based on a suggestion from her neighbor who she had told about the robbery. Jordan's counsel thoroughly cross-examined Earl about both of these issues and she remained adamant that Jordan robbed her on February 7. In any event, conflicts in testimony and questions about witness credibility are matters for the jury to resolve.[4] As long as there is some competent evidence, even though contradicted, to support each fact necessary for the state's case, the

---

[1] *Moore v. State*, 274 Ga. App. 432 (618 SE2d 122) (2005).

[2] Id.

[3] The trial court ruled that this statement was admissible as an excited utterance.

[4] *Johnson v. State*, 259 Ga. App. 452, 453 (2) (576 SE2d 911) (2003).

jury's verdict will be upheld.[5] We conclude that the evidence was sufficient to support Jordan's convictions for the charged crimes.

2. Relying on *Brodes v. State*,[6] Jordan claims that the trial court erred by instructing the jury that the level of certainty demonstrated by an eyewitness in his or her identification of a defendant is a factor the jury may consider in evaluating the eyewitness's reliability. In *Brodes*, the Supreme Court of Georgia held that it could "no longer endorse an instruction authorizing jurors to consider the witness's certainty in his/her identification as a factor to be used in deciding the reliability of that identification."[7] The Court advised trial courts to refrain from giving such an instruction to jurors.[8]

Here, the trial court gave the pattern jury instruction on reliability of identification, as requested by Jordan, which included the level of certainty shown by the witness about his or her identification as one factor to be considered in assessing the reliability of the identification.[9] "The act of requesting an instruction in the trial court constitutes a specific waiver of the right to enumerate it as error on appeal. Because [Jordan] induced the giving of the charge below, he is precluded from attacking it now."[10] We therefore need not consider whether including the instruction constituted harmful error in this case.

3. Jordan claims that the trial court erred by failing to give a requested jury instruction on the lesser included offense of robbery by intimidation. He argues that E. G.'s conflicting statements about whether he was involved in the robbery provided evidence from which he could have been found guilty of the lesser offense.

"[A] written request to charge a lesser included offense must always be given if there is any evidence that the defendant is guilty of the lesser included offense."[11] Although a written request to charge on the offense of robbery by intimidation does not appear in the record, counsel for Jordan represented to the trial court that such a request was included in the requests to charge he had submitted. The parties then argued their positions on whether the charge should be given before the court issued its ruling. Under the circumstances, we consider Jordan's claim on the merits.

---

[5] Id.

[6] 279 Ga. 435 (614 SE2d 766) (2005).

[7] Id. at 442.

[8] Id.

[9] Suggested Pattern Jury Instructions, Volume II: Criminal Cases, Section 1.35.10.1 (c) (3rd ed. 2003).

[10] *DeLoach v. State*, 272 Ga. 890, 892 (2) (536 SE2d 153) (2000) (citations omitted); see also *Zellars v. State*, 278 Ga. 481, 485 (7) (604 SE2d 147) (2004).

[11] *State v. Alvarado*, 260 Ga. 563, 564 (397 SE2d 550) (1990).

A person commits the offense of robbery by intimidation when, with intent to commit theft, he takes property of another from the person or immediate presence of another "[b]y intimidation, by the use of threat or coercion, or by placing such person in fear of immediate serious bodily injury to himself or to another."[12] A person commits the offense of armed robbery when, with intent to commit theft, he takes property of another from the person or the immediate presence of another "by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[13] The offense of robbery by intimidation is a lesser included offense of armed robbery.[14]

"Where the uncontradicted evidence shows completion of the offense of armed robbery, and no evidence is presented to the effect that a weapon was not used in the robbery, the defendant is not entitled to a jury charge on the lesser included offense of robbery by intimidation."[15] Earl and Williams testified that Jordan wielded a gun during the robbery. E. G., in his pretrial statement and in his letters to the prosecutor, stated that Jordan used a gun to perpetrate the robbery. Even at trial, E. G. did not deny that a gun was used during the robbery; he testified that one gun was involved and that he held it to Earl's head and demanded her money. Because the evidence shows the completed offense of armed robbery and there is no evidence that a gun was not used in the robbery, Jordan was not entitled to a jury charge on the lesser included offense.[16]

4. Jordan claims that the trial court erred by admitting similar transaction evidence. He argues that the transactions were not similar and that the prior offense was admitted for an improper purpose.

Jamal Clay testified that in 1997, when he was 12 years old, he was riding his bicycle when Jordan and others stopped him and Jordan asked if he could take his bicycle. When Clay refused, Jordan put a gun to his throat and told him to get off the bicycle. Clay got off, went home and called the police. Clay and Jordan were both students at the same middle school at the time. Jordan was 14 years old.

Sergeant Lawrence Bender of the Columbus police department took a statement from Jordan after he was arrested for that incident. Jordan stated that he saw a boy riding his bicycle and that someone else pulled out a gun and handed it to him. Jordan admitted that he

---

[12] OCGA § 16-8-40 (a) (2).

[13] OCGA § 16-8-41 (a).

[14] Id.

[15] *Brinson v. State*, 245 Ga. App. 411, 413 (2) (537 SE2d 795) (2000) (citation and punctuation omitted).

[16] See id.

"showed the boy a gun and said get off the bike." Jordan's excuse was that he was angry because his dog was missing and took it out on Clay. Jordan was charged with armed robbery and possession of a firearm during the commission of a felony. He pled guilty to the latter charge and entered a negotiated guilty plea to robbery. He was sentenced to serve three years and to spend nine years on probation. As a condition of his sentence, he was not to be released before his 18th birthday on June 20, 2000.

Before any evidence of independent offenses may be admitted, the trial court must conduct the hearing required by Uniform Superior Court Rule 31.3 (B) and the state must show three things: (1) that it seeks to introduce the evidence not to raise an improper inference as to the defendant's character but for some proper purpose; (2) that there is sufficient evidence to establish that the defendant committed the independent offense; and (3) that there is a sufficient connection or similarity between the independent offense and the crime charged so that proof of the former tends to prove the latter.[17] A crime does not have to be identical to the crime charged to be admissible as a similar transaction.[18]

> There can be a substantial variation of circumstances where there exists a logical connection between crimes which are essentially dissimilar. The issue of admissibility of extrinsic transactions has never been one of mere similarity. It is, rather, relevance to the issues in the trial of the case. . . . When similar transaction evidence is being introduced to prove motive, intent, or bent of mind, it requires a lesser degree of similarity to meet the test of admissibility than when such evidence is being introduced to prove identity. Similar transaction evidence can be introduced to prove motive [or bent of mind] when there exists some logical connection between the similar transaction evidence and the charged offense so that the similar transaction evidence tends to establish the charged offense.[19]

The trial court conducted the required hearing prior to admitting the similar transaction evidence. The state argued that it sought to introduce evidence of the prior offense to show bent of mind, motive and course of conduct. The trial court ruled that the state had satisfied the three requirements necessary for admission of similar

---

[17] *Williams v. State*, 261 Ga. 640, 642 (2) (b) (409 SE2d 649) (1991).

[18] *Jones v. State*, 226 Ga. App. 721, 723 (1) (487 SE2d 618) (1997).

[19] Id. (citation and punctuation omitted); *Fields v. State*, 223 Ga. App. 569, 571 (2) (479 SE2d 393) (1996).

transaction evidence. A trial court's determination that similar transaction evidence is admissible will not be disturbed absent an abuse of discretion.[20]

Here, the purposes for which the state sought to introduce the similar transaction were proper. The testimony of the victim and the investigating officer, along with Jordan's statement and guilty plea, provided sufficient evidence to establish that Jordan committed the prior offense. Whether the offenses were sufficiently similar is a closer question. Both offenses were armed robberies in which Jordan held a gun to the head of the victim; both were committed with an accomplice and neither appeared to involve much advance planning. While there are obvious differences between the two offenses, the proper focus is on the similarity, not the differences, between them.[21] We conclude that the trial court did not abuse its discretion in admitting evidence of the similar transaction.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED MARCH 8, 2006.

*John R. Mobley II*, for appellant.
*J. Gray Conger, District Attorney, Stacey S. Jackson, Assistant District Attorney*, for appellee.

---

[20] *Mangham v. State*, 234 Ga. App. 567, 569 (1) (507 SE2d 806) (1998).
[21] *Nashid v. State*, 271 Ga. App. 202, 205 (1) (609 SE2d 106) (2005).