## A08A1956. HILLMAN v. THE STATE.
(674 SE2d 370)

MIKELL, Judge.

A Peach County grand jury indicted Marvin Hillman III, Todd Green, Xavious Bernard Bivens, and Ricky Jerome Collier, Jr., on charges of armed robbery (two counts), burglary, aggravated assault, possession of a firearm by a convicted felon (Hillman and Green only), and participation in gang activity. Only Hillman proceeded to trial, and during the trial, his co-indictees were called to testify by the state.[1] Hillman was convicted of both counts of armed robbery, burglary, aggravated assault, and possession of a firearm by a convicted felon. On appeal, Hillman challenges the sufficiency of the evidence as to each conviction and argues that the trial court erred in (i) excusing several jurors; (ii) refusing to grant a mistrial after a juror testified that she knew the victim; (iii) not allowing Hillman to ask certain questions of Collier; (iv) failing to merge the burglary and armed robbery convictions; (v) failing to give three of appellant's jury charges; (vi) excluding statements from the jury room; (vii) allowing the state to impeach its own witnesses; and (viii) not declaring that the applicable sentencing statutes were unconstitutional. For the reasons set forth below, we affirm.

> On appeal from a criminal conviction, the evidence must be construed in a light most favorable to the verdict

---

[1] Bivens and Collier entered guilty pleas before trial. Green did not plead guilty and had not been tried on these offenses as of the date of Hillman's appeal.

and [Hillman] no longer enjoys a presumption of innocence. In evaluating the sufficiency of the evidence to support a conviction, we do not weigh the evidence or determine witness credibility, but only determine whether a rational trier of fact could have found the defendant guilty of the charged offenses beyond a reasonable doubt.[2]

So viewed, the record shows that during the early morning hours of July 10, 2007, Stephen Daniels, Angel Moore, and April Melton were at Melton's house when there was a knock at the door. Daniels and Moore answered the door, and Ricky Collier entered the residence. After speaking with them, Collier left the house and as Daniels was about to shut the door behind him, three masked men burst into the room carrying weapons. They ordered Moore and Daniels to the floor and yelled questions at Melton. The men took a cell phone from Moore and seven dollars from Melton.

Collier testified that on the evening in question, he had seen Hillman, Bivens, and Green earlier that day at Lakeview Apartments; that he had known Hillman, whose nickname was "Scoop," for approximately two years and owed Hillman $50; and that in exchange for the forgiveness of his debt, Collier agreed to show Hillman where Kyle Harris (April Melton's fiancé) lived. Collier further testified that they rode to Harris's apartment in Green's car, that he knocked on the door to inquire about Harris, and that Hillman, Bivens, and Green rushed the door with weapons. He recalled that Hillman had a nine mm handgun. Collier testified that he had no part in planning the robbery and did not know whose idea it was but Hillman, Bivens, and Green committed the robbery. Collier testified that he pled guilty to burglary before the trial and that his sentence was contingent upon his testimony in the case.

Both victims testified that they did not recognize any of the masked men. Moore testified, however, that she had heard Hillman's voice a couple of times before the incident and thought that one of the intruders sounded like him. On cross-examination, however, Moore could not say that she was positive that the voice she heard that night was Hillman's. But Daniels, who was present when the crime occurred, also testified that the man who was yelling sounded like Hillman.

April Harris (formerly known as April Melton) testified that she had fallen asleep that evening and was awakened by a man with a gun telling her to get up. Melton recalled that the men repeatedly asked her "where's it at" and that she assumed they meant money

---

[2] (Citations, punctuation and footnotes omitted.) *Johnson v. State*, 293 Ga. App. 32, 33 (666 SE2d 452) (2008).

and told them that she did not know what they were talking about and did not have any money. The men became angry, flipped over furniture in the house, then threw Melton against the wall and kicked her in the face and side of her head. Melton testified that the men picked up a rifle that was at her house and carried handguns and that they made them all lie face down before they left, after taking seven dollars from her back pocket. After she heard the men leave, Melton ran across the street to her uncle's house and he called the police. Melton recalled that Collier had been in her apartment earlier that day.

Bivens, who pled guilty to robbery by intimidation, testified that no robbery occurred and that he only gave a statement implicating himself, Hillman, Todd, and Collier because he was forced to do so by Investigator Haliburton. Bivens stated that he was told that if he repeated everything the officer told him to say in his statement, he would be released. Bivens recalled that the police wanted Hillman, and because Bivens held a grudge against Hillman, he helped the police.

Green testified that Haliburton told him that he would do anything to get Hillman off the street and that he gave Haliburton a statement implicating himself and his co-indictees. Green maintained that he was not present when the robbery occurred.

Officer Michael Mumford of the Byron Police Department testified that he interviewed April Melton and that she identified Collier from a lineup. Mumford and Investigator Haliburton picked up Collier and when they interviewed him, he identified his co-indictees. Haliburton testified that he secured statements from each suspect after reading them their constitutional rights. Haliburton acknowledged that he told Collier that his cooperation would be considered when he was sentenced, but indicated that he never tells suspects what to write in their statements. Haliburton testified that the only weapon recovered was the shotgun and that Green admitted that he was carrying that weapon during the incident.

1. Hillman challenges the sufficiency of the evidence, arguing that the co-indictees' testimony was perjured and was not corroborated by other truthful testimony.

> In Georgia, the testimony of an accomplice used to convict the accused of a crime must be supported by independent corroborating evidence as to the identity and participation of the accused tending to connect him to the crime or leading to the inference that he is guilty. However, where two or more accomplices testify at the trial of an

accused, the testimony of one accomplice may be corroborated by the testimony of the other accomplice.[3]

Therefore, based on the testimony of Collier, Bivens, and Green, the evidence was sufficient to support each of Hillman's convictions.

2. In Hillman's second through sixth enumerated errors, he argues that the trial court erred in excusing for cause jurors 14, 28, 35, 41, and 48, all of whom indicated that they could give a fair verdict despite their relationship to the defendant. Jurors 14 and 28 testified that they were friends with Hillman. Juror 35 testified that he and Hillman were fourth or fifth cousins and grew up together. Juror 41 testified that he knew Hillman very well and would have difficulty convicting him. Juror 48 testified that he had known Hillman for his entire life and that they were like family.

"[T]he decision to strike a juror for cause lies within the sound discretion of the trial court."[4] Therefore, such a determination by the trial court "will not be set aside absent some manifest abuse of its discretion."[5] "An appellate court must pay deference to the finding of the trial court and this deference includes the trial court's resolution of any equivocations or conflicts in the prospective juror's responses on voir dire."[6] There was no manifest abuse of the trial court's discretion in striking for cause any of the jurors referenced above.[7]

3. Hillman argues that the trial court erred when it denied his motion for mistrial after juror 42 stated that she knew the victim and had talked to the victim's father during and after voir dire. The record shows that after deliberations had begun, juror 42 wrote a letter to the trial judge informing him that she knew the victims, had spoken to Melton's father and Hillman's mother during voir dire, and lived close to the area where the crime occurred. The juror testified that she knew people on both sides of the case because they were in school with her children and was afraid of potential ramifications of rendering a verdict in the case. She also indicated that she had not shared any of this information with her fellow jurors. The juror was excused and an alternate juror was substituted. Hillman's counsel moved for mistrial, which the trial court denied because there was an alternate juror.

"[T]he decision whether to grant or deny a motion for mistrial

---

[3] (Citations omitted.) *Eubanks v. State*, 240 Ga. 544, 545-546 (1) (242 SE2d 41) (1978).

[4] (Citation omitted.) *Garland v. State*, 263 Ga. 495, 496 (1) (435 SE2d 431) (1993).

[5] (Citation omitted.) *Stokes v. State*, 281 Ga. 825, 827 (2) (642 SE2d 82) (2007).

[6] (Citation and punctuation omitted.) *Adams v. State*, 283 Ga. 298, 299 (2) (658 SE2d 627) (2008) (juror who was a close friend of the defendant excused for cause after reluctantly stating that he could apply the law and render a verdict).

[7] Id.

YALE LAW LIBRARY

rests within the trial court's discretion, and we will not disturb the court's ruling absent a manifest abuse of that discretion which threatens the defendant's right to a fair trial."[8] Pursuant to OCGA § 15-12-172,[9] "upon 'good cause shown to the court,' a trial court may replace a juror with an alternate."[10] "The trial court must exercise its discretion in removing a juror, and it may effect such a removal even after deliberations have begun. There must be some sound basis upon which the trial judge exercises his discretion to remove the juror."[11] The trial court was authorized to conclude that there was good cause to remove the juror because of her inability to perform her duty. Accordingly, we find no abuse of discretion in the trial court's decision to deny the motion for mistrial.

4. In his eighth enumerated error, Hillman argues that the trial court erred when it did not permit him to ask Collier the following questions elicited during the following colloquy:

> [Defense]: Is it your hope today that if you testify and basically say what the prosecutors want you to say that you're going to get a reduced sentence; is that right?
>
> [State]: Your Honor, I'm going to object.
>
> The Court: I'm going to sustain the objection. That's an improper question. Go ahead.
>
> [Defense]: Let me ask you. What do you hope's going to happen as a result of your testimony?
>
> The Court: Well, I think, what I'm saying is improper is the intimation. I mean, there's a suggestion that he's saying exactly what the prosecutor told him to say. I mean, I just — I don't know that — I mean that was an objection that [the State] made.
>
> [Defense]: Yes, sir.
>
> The Court: And I sustained that objection to that piece of the question. I think you have a right to show bias, motive, anything else. And I'll give you a thorough and sifting cross-examination on that.
>
> [Defense]: Well, sir, can I ask him if he feels that he's going to help himself?

---

[8] (Footnote omitted.) *McConnell v. State*, 263 Ga. App. 686, 688 (3) (a) (589 SE2d 271) (2003).

[9] The statute provides, in pertinent part: "If at any time, whether before or after final submission of the case to the jury, a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause, the first alternate juror shall take the place of the first juror becoming incapacitated."

[10] *Carr v. State*, 282 Ga. 698, 702 (4) (653 SE2d 472) (2007).

[11] (Citation and punctuation omitted.) Id.

The Court: Absolutely, absolutely.

As shown above, defense counsel did not object to the trial court's ruling. "No matter how erroneous a ruling of the trial court might be, a litigant cannot submit to a ruling or acquiesce in the holding, and then complain of the same on appeal. Accordingly, the instant claim of error is waived."[12] Nonetheless, exercising our discretion to consider this claimed error, the record shows that Collier testified on direct examination that he had pled guilty to burglary and that the duration of his sentence was dependent upon his testimony. On cross-examination, Collier was asked whether his reduced sentence influenced his testimony, and he replied that it did not. He was also asked whether he believed he would help himself by testifying, and Collier was permitted to answer the question. Therefore, there was other evidence in the record from which the jury could have inferred Collier's motive for testifying. Accordingly, even if the trial court erred in not permitting the questions at issue, we find no harm. "[I]t is fundamental that harm as well as error must be shown for reversal."[13]

5. Hillman asserts that his armed robbery and burglary convictions should have been merged because the same evidence was used to secure all three convictions. We disagree.

Hillman was convicted of two counts of armed robbery. In the first, Hillman was charged with taking property from the person and immediate presence of Melton, and in the second, from Moore. The charge of burglary was predicated on entering Melton's residence with the intent to commit a felony therein.

> The key question in determining whether offenses have merged is whether the different offenses are proven with the same set of facts. For example, if one crime is complete before the other takes place, the two crimes do not merge. However, if the same facts are used to prove the different offenses, the different crimes merge.[14]

Pursuant to OCGA § 16-7-1 (a), "[a] person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another . . . or any room or any part thereof." "To complete

---

[12] (Citation, punctuation and footnote omitted.) *Leggon v. State*, 249 Ga. App. 467, 473 (6) (549 SE2d 137) (2001).

[13] (Citation omitted.) *Matthews v. State*, 268 Ga. 798, 803 (4) (493 SE2d 136) (1997).

[14] (Citations and punctuation omitted.) *Jones v. State*, 279 Ga. 854, 857 (3) (622 SE2d 1) (2005).

the crime of burglary, it is not necessary that a defendant actually commit a completed theft; it is sufficient if he enters without authority and with the intent to commit a theft or felony."[15] Therefore, in this case, the burglary was completed when Hillman burst into Melton's residence without permission.

An armed robbery, on the other hand, occurs when "[a] person . . . , with intent to commit theft, . . . takes property of another from the person or the immediate presence of another by use of an offensive weapon, or any replica, article, or device having the appearance of such weapon."[16] The armed robberies occurred subsequent to the burglary when Hillman used a weapon to take property from Melton and Moore. Accordingly, there was no error in failing to merge the offenses.

6. Next Hillman argues that the trial court erred when it failed to charge the jury on robbery by intimidation and robbery by force as Hillman requested. When there is no evidence that the robbery was committed without the use of a gun, the defendant is not entitled to a jury charge on the lesser included offense of robbery by intimidation.[17] Additionally, since the uncontradicted evidence showed completion of the greater offense of armed robbery, the charge on robbery by force was not required.[18]

7. Hillman contends that the trial court erred when it refused to give his request to charge no. 15, which provided as follows: "The guilty plea of a witness who is a co-indictee in the case should only be used to determine the credibility of the witness and not be used as proof of a defendant's guilt."

Under OCGA § 24-3-52, a non-testifying co-indictee's guilty plea is inadmissible at trial under the theory that it is not competent proof of the defendant's guilt. OCGA § 24-3-52, however, is inapplicable where, as in this case, the accomplice takes the stand and is subject to cross-examination.[19]

---

[15] (Punctuation and footnote omitted.) *Adams v. State*, 284 Ga. App. 534, 535 (1) (644 SE2d 426) (2007).

[16] OCGA § 16-8-41 (a).

[17] See *Jordan v. State*, 278 Ga. App. 126, 130 (3) (628 SE2d 221) (2006) ("[w]here the uncontradicted evidence shows completion of the offense of armed robbery, and no evidence is presented to the effect that a weapon was not used in the robbery, the defendant is not entitled to a jury charge on the lesser included offense of robbery by intimidation") (punctuation and footnote omitted); *Carter v. State*, 257 Ga. App. 620, 622 (1) (571 SE2d 831) (2002) (same).

[18] See *Jordan v. State*, 239 Ga. 526, 527 (2) (238 SE2d 69) (1977). See also *Coker v. State*, 207 Ga. App. 482, 484 (4) (428 SE2d 578) (1993) (even where weapon was never recovered by law enforcement officers or placed in evidence, evidence proved the greater offense of armed robbery or none at all so no error in refusing to give a requested charge on robbery by force).

[19] (Footnotes omitted.) *Barnes v. State*, 269 Ga. 345, 354 (15) (496 SE2d 674) (1998).

In *Pinckney v. State*,[20] this Court expanded the exceptions to the rule set forth in OCGA § 24-3-52. We stated that the rule also does not "apply where the joint offender's guilty plea is admitted with instructions that it not be used as evidence of the defendant's guilt."[21] In the instant case, the guilty pleas, which were not admitted as exhibits at trial, were admissible because the accomplices testified and were subject to cross-examination. Hillman did not request a limiting instruction when the accomplices testified that they pled guilty but submitted a request for charge that the guilty pleas could not be used as proof of Hillman's guilt, which the trial court refused. In so doing, the trial court noted its charge to the jury that "[i]n assessing the credibility of a witness you may consider any possible motive in testifying, if shown. In that regard, you are authorized to consider any possible pending prosecutions, negotiated pleas, grants of immunity or leniency or similar matters."

Even if we were to agree that the limiting instruction should have been given as well, Hillman has not demonstrated harm, which he must do to obtain a reversal of his convictions.[22] In addition to the guilty pleas of Bivens and Collier, both Bivens and Collier as well as Green gave statements implicating themselves and Hillman. Hillman cross-examined the co-indictees extensively about their statements and notably, Bivens and Green denied their involvement as well as Hillman's. Thus, we do not find that Hillman was prejudiced by the trial court's failure to charge the requested instruction.[23]

8. In his next enumerated error, Hillman challenges the trial court's refusal to allow into the deliberation room his co-indictees' written statements that Hillman was not involved in the robbery. The full content of the statements at issue was read into evidence. Hillman argues that the statements should have gone out with the jury as they were admitted without objection, but the law is clear that "[t]he underlying 'admissibility' of written evidence in a case is a separate and distinct issue from whether that evidence should be allowed to go out with the jury."[24]

---

[20] 236 Ga. App. 74 (510 SE2d 923) (1999).

[21] (Citations omitted.) Id. at 75 (1) (defendant's convictions reversed because defendant was not allowed to cross-examine his accomplice nor were limiting instructions given that the accomplice's testimony could not be used as substantive evidence of the defendant's guilt).

[22] See *Matthews*, supra.

[23] See *James v. State*, 196 Ga. App. 569, 570 (396 SE2d 306) (1990) (the danger of prejudice is removed when the co-defendant testifies to matters other than his conviction and defendant has ample opportunity to challenge his credibility).

[24] (Citation and punctuation omitted.) *Clark v. State*, 284 Ga. 354, 355 (667 SE2d 37) (2008).

> In Georgia, the continuing witness objection is based on the notion that written testimony is heard by the jury when read from the witness stand just as oral testimony is heard when given from the witness stand. But, it is unfair and places undue emphasis on written testimony for the writing to go out with the jury to be read again during deliberations, while oral testimony is received but once.[25]

The rule "prohibits writings from going out with the jury when the evidentiary value of such writings depends 'on the credibility of the maker.' "[26] As these statements were read into evidence and dependent upon the declarants' credibility, we find no error in the trial court's decision to prevent this evidence from going out with the jury.

9. In enumerated errors thirteen and fourteen, Hillman argues that the trial court erred in allowing the state to improperly impeach Bivens and Green with their prior statements, which were inconsistent with their trial testimony. Hillman maintains that the state was permitted to bolster the witnesses' credibility by use of these statements. We find no error. Our Supreme Court held in *Gibbons v. State*[27] that "a prior inconsistent statement of a witness who takes the stand and is subject to cross-examination is admissible as substantive evidence, and is not limited in value only to impeachment purposes."[28] A fortiori, the statements were admissible to impeach the witnesses. Additionally, we disagree with Hillman that the state attempted to bolster the witnesses' credibility with the statements, particularly since they testified that the statements were untrue.

10. In his last enumeration of error, Hillman contends that the trial court erred when it did not declare unconstitutional OCGA §§ 17-10-6.1 (c) (1)[29] and 16-8-41 (b)[30] on the grounds that the imposition of the mandatory minimum sentence upon him constituted

---

[25] (Footnote omitted.) *Adams v. State*, 284 Ga. App. at 536 (2).

[26] (Punctuation and footnote omitted.) *Bryant v. State*, 270 Ga. 266, 270 (3) (507 SE2d 451) (1998).

[27] 248 Ga. 858 (286 SE2d 717) (1982).

[28] Id. at 862.

[29] The statute provides that

[e]xcept as otherwise provided in subsection (c) of Code Section 42-9-39, for a first conviction of a serious violent felony in which the defendant has been sentenced to life imprisonment, that person shall not be eligible for any form of parole or early release administered by the State Board of Pardons and Paroles until that person has served a minimum of 30 years in prison. The minimum term of imprisonment shall not be reduced by any earned time, early release, work release, leave, or other sentence-reducing measures under programs administered by the Department of Corrections.

[30] This statute provides that "[a] person convicted of the offense of armed robbery shall be punished by death or imprisonment for life or by imprisonment for not less than ten nor

cruel and inhumane punishment. Hillman was sentenced to life imprisonment on the armed robbery convictions, twenty years each on the burglary and aggravated assault convictions, and five years on the possession of a firearm charge, and pursuant to the challenged statutes, will not be eligible for parole until he has served thirty years. Acknowledging its previous holding that the mandatory sentencing provisions of OCGA § 17-10-6.1 do not constitute cruel and unusual punishment, our Supreme Court in *Campbell v. State*[31] found constitutional the legislature's actions of establishing maximum and minimum punishments and eliminating judicial discretion for the sentencing of certain violent offenders.[32] Accordingly, this enumerated error fails.

*Judgment affirmed. Smith, P. J., and Adams, J., concur.*

DECIDED FEBRUARY 26, 2009.

*Robert M. Bearden, Jr.*, for appellant.
*Howard Z. Simms, District Attorney, John A. Regan, Gregory W. Winters, Assistant District Attorneys*, for appellee.

---

more than 20 years."

