## S07A1665. RIVERS v. THE STATE.

(655 SE2d 594)

BENHAM, Justice.

Bernard Roberts was fatally shot on October 15, 2003, while in a fistfight with appellant Lavone Rivers.[1] Rivers contends on appeal that the evidence was not sufficient to authorize the convictions, that his motion to sever his trial from that of his co-defendant was improperly denied, and that he was denied his right to effective assistance of trial counsel. After reviewing the record and transcript in light of appellant's assertions of error, we find no reversible error and affirm the judgment of conviction.

---

[1] The victim was shot and died on October 15, 2003. Appellant Lavone Rivers and his co-defendant, Malcolm Xavier Windham, were charged with malice murder, felony murder (aggravated assault), and possession of a firearm during the commission of a crime in a true bill of indictment returned by the Chatham County grand jury on December 30, 2003. The duo stood trial before a jury October 19-22, 2004. The jury found appellant guilty of all three charges and found Windham guilty of voluntary manslaughter and possession of a firearm during the commission of a crime. Appellant was sentenced to life imprisonment for the malice murder conviction and a consecutive five-year term for the firearm possession conviction. Appellant's motion for new trial, filed by trial counsel on October 27, 2004, was amended by current appellate counsel on May 19, 2005, to allege ineffective assistance of trial counsel. A hearing on the amended motion was held on September 19, 2005, with current appellate counsel participating. Current appellate counsel withdrew from representation shortly thereafter and new appellate counsel was appointed and served as appellate counsel until after the amended motion was denied on February 1, 2007. Current appellate counsel returned to the case and timely filed the notice of appeal on February 9, 2007, and represented appellant in this Court upon the appeal being docketed here on July 19, 2007. The case was submitted for decision on the briefs.

The State presented evidence that Bernard Roberts was shot twice after he and appellant threw punches at each other, and died from the gunshot wounds, one of which was fired twelve inches away from the victim and the other of which struck the victim in the back. Two eyewitnesses, one of whom was acquainted with both appellant and the victim, identified appellant as the man who exited a Ford Expedition sport utility vehicle (SUV), angrily approached the victim, and began fighting with the victim. Co-defendant Malcom Xavier Windham was identified as a person who followed appellant from the SUV. Four eyewitnesses identified appellant as the man they saw with a gun in his hand, two of the witnesses saw appellant hit the victim in the head with the gun, and three of the witnesses testified they saw appellant fire the gun in the direction of the victim. The victim ran away, but was found dead a short distance away. Eight .380 shell casings and live 9-mm. ammunition were discovered at the site.

Appellant and co-defendant Windham went to the police station the morning after the shooting and gave separate videotaped statements that were played for the jury after both defendants waived any *Bruton*[2] issues. Appellant told police he had been involved in a confrontation at a club three months before the victim was shot, and had been struck by and fought with a person accompanying the victim. The night before the victim was shot, appellant and the victim exchanged words while each was in his vehicle, and the encounter ended with the victim pointing his finger at appellant and stating, "I got you," which appellant took to be a threat. The next day, while driving with Windham in Windham's SUV, appellant saw the victim and engaged in a fistfight with him. According to appellant, when the victim reached as if to get a gun, appellant ran back to the SUV shouting for Windham, heard shots fired, and saw Windham shooting. He and Windham left the scene. Appellant initially denied having a gun, then admitted having a 9-mm. pistol but denied firing any shots. He told police he and Windham threw Windham's gun in a dumpster. A .380 pistol was recovered from the dumpster and was discovered to be the weapon from which the fatal shots were fired. A 9-mm. pistol was recovered from an expressway ramp. In his videotaped statement, co-defendant Windham corroborated appellant's account of the encounter at the club and said he started shooting at the scene of the victim's death when appellant was running back to the SUV and calling Windham's name.

---

[2] *Bruton v. United States*, 391 U. S. 123 (88 SC 1620, 20 LE2d 476) (1968) (admission of the confession of a non-testifying co-defendant inculpating the defendant deprived the defendant of his Sixth Amendment right to confront the witness by means of cross-examination).

At trial, appellant testified that his previous encounters with the victim had caused him to be fearful and to purchase a gun to protect himself. On the day the victim was shot, the victim flagged down the SUV appellant was driving. Appellant parked his vehicle and got out and walked to the victim, who had two people with him and others in a nearby yard. Appellant testified the victim struck him and the two of them got into a fistfight. Appellant pulled his gun when the victim's companions started to approach appellant and the victim, but he never fired the gun. The clip fell from appellant's gun, the victim acted as if he were reaching for a gun, and appellant ran toward the SUV, calling for Windham after he heard two shots fired. He saw Windham fire his gun, and he and Windham got into appellant's vehicle and drove off.

1. The evidence was sufficient to authorize the jury to find that appellant intentionally shot and killed the victim after having fought with him, and to conclude beyond a reasonable doubt that appellant was guilty of malice murder and possession of a firearm during the commission of a crime. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

Appellant maintains the evidence was not sufficient to authorize the judgment of conviction, contending he acted in self-defense and there was no evidence appellant intended to kill the victim. The question of self-defense is to be determined by the jury when there is conflicting evidence on the issue. *Russell v. State*, 267 Ga. 865 (1) (485 SE2d 717) (1997). Assuming, in light of appellant's adamant denial he fired his weapon, there was conflicting evidence on the issue, it is for the jury to decide whether to accept or reject appellant's claim he acted in self-defense. *Murphy v. State*, 279 Ga. 410 (614 SE2d 53) (2005). The evidence was sufficient to authorize a rational trier of fact to reject appellant's claim of self-defense.

Appellant's contention the evidence is insufficient to authorize his convictions because there is no evidence he intended to kill the victim also fails. Malice murder is committed when the evidence shows either an express or implied intent to commit an unlawful homicide, i.e., by evidence the defendant acted with the "deliberate intention unlawfully to take the life of another human being" or by evidence the defendant acted "where no considerable provocation appears and where all the circumstances of the killing show an abandoned and malignant heart." OCGA § 16-5-1 (b). The evidence that appellant stopped his vehicle upon seeing the victim, angrily approached the victim, struck the victim with his fists and with his gun, and then shot him was sufficient evidence of an intent to kill.

2. On the day trial was scheduled to begin, appellant filed a motion to sever his trial from that of Windham, his co-indictee, because of antagonistic defenses, i.e., appellant was asserting Windham

fired the fatal shots and Windham's counsel was contending appellant fired the shots. On appeal, he contends the trial court erred when it denied the motion.

A trial court's decision not to sever the trials of co-indictees in a capital case in which the death penalty is not sought is reviewed for abuse of discretion, and the movant must make a clear showing that a joint trial was prejudicial and consequently resulted in a denial of due process. *Hanifa v. State*, 269 Ga. 797 (4) (505 SE2d 731) (1998). "Antagonism between co-defendants . . . is not enough in itself to require severance, rather appellant must also demonstrate that he was harmed by the failure to sever." *Dennard v. State*, 263 Ga. 453, 455 (5) (435 SE2d 26) (1993), overruled on other grounds in *Sanders v. State*, 281 Ga. 36 (1) (635 SE2d 772) (2006). In light of the numerous witnesses called by the State who identified appellant as the person who shot the victim, appellant has not shown the clear prejudicial harm necessary to overturn the trial court's denial of the motion to sever. *Heard v. State*, 274 Ga. 196 (5) (552 SE2d 818) (2001).

3. Appellant next contends trial counsel rendered ineffective assistance of counsel. To prevail on a claim of ineffective assistance of trial counsel, appellant must show counsel's performance was deficient and that the deficient performance prejudiced appellant to the point that a reasonable probability exists that, but for counsel's errors, the outcome of the trial would have been different. *Pruitt v. State*, 282 Ga. 30 (4) (644 SE2d 837) (2007).

(a) Appellant contends trial counsel rendered ineffective assistance when he did not impeach two witnesses on cross-examination with prior statements they had made. With regard to one of the witnesses, appellant has failed to prove deficient performance since the trial transcript reflects that, after the witness testified he had seen appellant use a gun to hit the victim and then shoot the victim, trial counsel brought out on cross-examination that the witness initially had given a false name to police and had told the investigating detective the victim had struck appellant first, appellant had run off after pulling his gun, and the witness had not seen if appellant shot the victim because a house obstructed his view. This allegation of ineffective assistance fails since a finding of ineffective assistance of counsel requires proof of both deficient performance and prejudice, and there is no proof of deficient performance. *Pruitt v. State*, supra, 282 Ga. at 34 (4).

The second witness appellant asserts was not properly impeached identified appellant as "the heavier-set gentleman" he saw fight with the victim, draw a gun, fire the gun twice, and walk to the SUV in which the shooter had arrived. On cross-examination, the witness stated he had heard a shot before he saw appellant fire two shots. Appellant contends on appeal trial counsel failed to bring up

the fact that the witness was not able to identify appellant in a pre-trial lineup and that he had earlier told police he did not know who had fired the shots. Pretermitting whether the failure to raise these issues on cross-examination constitutes deficient performance, appellant did not establish prejudice, i.e., that, but for that deficient performance, the outcome of the trial would have been different. In light of the testimony of two other eyewitnesses that appellant fired shots at the victim, there is no reasonable probability that, had trial counsel impeached the witness with his prior statement, the outcome of the trial would have been different. See *Tolbert v. State*, 282 Ga. 254 (3) (647 SE2d 555) (2007).

(b) Appellant also contends trial counsel rendered ineffective assistance when he did not file a motion to suppress an eyewitness's in-court and out-of-court identification of appellant as the perpetrator. Trial counsel testified at the hearing on the amended motion for new trial that he did not file a motion to suppress the identification because he relied on being able to cross-examine the witness and expose the fact that the identification of appellant might not be as "secure" as the witness thought.

"When trial counsel's failure to file a motion to suppress is the basis for a claim of ineffective assistance, the defendant must make a strong showing that the damaging evidence would have been suppressed had counsel made the motion." *Richardson v. State*, 276 Ga. 548 (3) (580 SE2d 224) (2003). Testimony concerning a pre-trial identification of a defendant should be suppressed

> if the identification procedure was impermissibly suggestive and, under the totality of the circumstances, the suggestiveness gave rise to a substantial likelihood of misidentification. [Cits.] . . . An identification procedure is impermissibly suggestive when it leads the witness to an "all but inevitable identification" of the defendant as the perpetrator. . . .

*Miller v. State*, 270 Ga. 741, 743 (2) (512 SE2d 272) (1999). Appellant does not contend the photo array shown to the eyewitness was impermissibly suggestive; rather, he maintains the witness's identification of appellant was inadmissible because it might have been influenced by her viewing of a news story about the murder which contained a picture of appellant. Appellant's contention raises an issue of the weight to be given the witness's testimony concerning her identification of appellant, not the admissibility of that testimony. See *Felts v. State*, 256 Ga. App. 733 (2) (b) (569 SE2d 633) (2002). During his cross-examination of the witness, trial counsel brought out the fact that the witness had seen the news story. Since appellant did not make and, in all likelihood, could not have made a

strong showing that the witness's identification testimony would have been suppressed had trial counsel so moved, appellant did not establish ineffective assistance of counsel. *Richardson v. State*, supra, 276 Ga. at 553.

*Judgment affirmed. All the Justices concur.*

DECIDED JANUARY 8, 2008.

*Martin G. Hilliard*, for appellant.

*Spencer Lawton, Jr., District Attorney, Ronald M. Adams, Assistant District Attorney, Thurbert E. Baker, Attorney General, David A. Zisook, Assistant Attorney General*, for appellee.