A09A0215. MATHIS v. THE STATE.
A09A0308. FORTIE v. THE STATE.
A09A0358. WALLER v. THE STATE.

(684 SE2d 6)

DOYLE, Judge.

Following a joint jury trial, Jeremiah Waller and Jean Fortie were each convicted of two counts of armed robbery,[1] and Doney P. Mathis was convicted of two counts of armed robbery,[2] possession of a firearm during the commission of a crime,[3] and obstruction of a law enforcement officer.[4] All three have appealed, and we have consolidated the appeals for review.[5] Mathis alleges that the trial court erred in denying his motion for new trial because: the evidence was insufficient; the trial court failed to sever the trials; the court failed to grant a mistrial after the State injected improper character evidence; the presence of uniformed and plainclothes law enforcement officers during the trial violated his due process rights; and the trial court failed to continue the trial until his court-ordered mental evaluation was completed. Fortie contends that the trial court erred in admitting certain evidence that improperly injected his character into the trial and in denying his motion to sever; Fortie also alleges that he received ineffective assistance of counsel. Waller argues that the trial court erred in denying his request to give a jury charge on coercion and duress and in admitting certain evidence. We affirm the convictions of Mathis and Fortie, and we reverse Waller's conviction, for reasons that follow.

On appeal from a criminal conviction, we review the evidence in a light favorable to the verdict, and the defendant no longer enjoys a presumption of innocence.[6] We neither resolve issues of witness credibility nor weigh the evidence, but merely determine whether the evidence was sufficient to find the defendant guilty beyond a reasonable doubt.[7] So viewed, the evidence shows that on August 4, 2005, Sheree Dean and Susan Hand were working as bank tellers at the Family Bank in Decatur County. At 8:50 a.m., Dean and Hand, who were inside the bank preparing for the 9:00 a.m. opening, observed a man — later identified as Jean Fortie — walk up to the entrance and look through the door into the bank. At approximately

---

[1] OCGA § 16-8-41 (a).

[2] Id.

[3] OCGA § 16-11-106 (b).

[4] OCGA § 16-10-24 (a).

[5] A fourth co-defendant, Tonya Jackson, entered a plea to robbery prior to the joint trial of the other three individuals.

[6] See *Moore v. State*, 274 Ga. App. 432 (618 SE2d 122) (2005).

[7] See id.

9:10 a.m., Mathis and Waller entered the bank, running. Waller had a stocking on his face, and Mathis was in the process of pulling a stocking over his head. Mathis, who was brandishing a gun, yelled, "Give me the money, give me the goddam [sic] money. I want all the money." Both men were standing at the counter, and Mathis hit the counter and repeatedly instructed Dean to "hurry up." Dean retrieved as much money as she could, running back and forth from her teller station at the drive-through to the counter where the men were standing; she placed the money on the counter, and Waller shoved the money into a bag. According to Hand, the men took approximately $7,400 in cash from the bank. Waller and Mathis also took $50 from a bank customer. The two men then ran out of the bank and down a dirt road behind the bank.

Tom Wheeler, who was driving by the scene, saw two men run out of the bank. Because he believed that the men were "doing something wrong," Wheeler attempted to follow them in his vehicle by cutting through an adjacent driveway. As he did so, he encountered a blue Buick containing four individuals. The Buick stopped inches away from his vehicle, and Wheeler backed up and let the car go past him after the driver repeatedly pumped the brake, causing the car to rock back and forth in a threatening manner. Wheeler then called 911 and followed the Buick for approximately a mile-and-a half, but stopped after he saw a gun pointed out of the driver's side rear window of the Buick.

All Decatur County Sheriff's deputies on duty at that time were instructed to search for the suspects and were given a description of the Buick, including the license plate number, as well as a description of Waller and Mathis and their clothing. Lieutenant Rick Ashley observed the Buick and pursued it at a high rate of speed for six miles until another patrol car joined him, and he initiated a traffic stop. Mathis leaped out of a rear door and fled into the woods. Waller, Fortie, and a woman, Tonya Jackson, remained in the car and were arrested on the scene. The authorities searched the Buick and found multiple money wrappers bearing the Family Bank stamp. Police apprehended Mathis in the same general area the following day; Mathis was in possession of $7,144 in cash.

The State tried Waller, Fortie, and Mathis together in a joint trial. Jackson — who was charged with two counts of armed robbery, entered a plea to robbery and was sentenced to twenty years — testified. Jackson testified that on August 3, 2005, she, Fortie (her boyfriend), Waller, and Mathis discussed robbing a bank. The following morning, the four of them went to Wal-Mart, where Waller stole stockings and Fortie stole a "fake" "gun that shoots animals, like a pellet [gun]." They then went to the Family Bank, and she and Fortie waited in the car while Mathis and Waller went inside; Mathis and

Waller ran out of the bank, down a dirt road, and jumped into the vehicle, which Fortie was driving.

Waller also testified, denying that he discussed robbing a bank with the other three individuals. According to Waller, he was asleep in the car when Fortie awakened him outside a bank, instructing him to "go with . . . Mathis." Waller testified that he initially refused, but complied after Fortie pointed a gun at him. Waller and Mathis approached the bank, and Mathis instructed him to don a stocking cap. Waller testified that he refused, but Mathis "pulled out a gun and told me, do what I told you to do or you won't see your family no more." The two men then entered the bank, and Mathis demanded and collected money; Waller denied taking money or putting it in a bag. The jury found Waller, Mathis, and Fortie guilty on all counts, and all three have appealed.

### Case No. A09A0215

1. Mathis, in a single enumeration of error, alleges that the trial court erred in denying his motion for new trial. He divides his argument into several sub-parts, which we address in turn.

(a) Mathis contends that the verdicts as to armed robbery and possession of a firearm during the commission of a crime were contrary to law and unsupported by the evidence because the indictment charged him with committing armed robbery with the use of a handgun (as opposed to a replica), while the testimony at trial established that a toy gun was used in the robbery.

Mathis provides no statutory or legal authority for this contention, in violation of our rules.[8] Notwithstanding his failure to do so, however, this argument is without merit. We have previously held that there was no fatal variance between an indictment that alleged that the defendant committed armed robbery by the use of a handgun and evidence that showed that the defendant used a BB gun; or between an indictment that alleged that armed robbery was committed by the use of a pistol and evidence that showed that the weapon was a pellet gun.[9] Similarly, there is no fatal variance here between the indictment that alleged that Mathis committed armed robbery through the use of a handgun, and the evidence that showed that the weapon used was a pellet gun. "[T]here was no risk that [Mathis] was uninformed as to the charges against him or that he could be prosecuted for the same offense twice. . . . The evidence did

---

[8] See Court of Appeals Rule 25 (c) (2).

[9] See *Palmer v. State*, 286 Ga. App. 751, 754 (2) (650 SE2d 255) (2007); *Johnson v. State*, 266 Ga. App. 898, 900 (2) (598 SE2d 551) (2004).

not fatally vary from the indictment."[10] Thus, Mathis's arguments that the verdicts were contrary to law or unsupported by the evidence are without merit.

(b) Mathis further argues that the trial court erred by failing to sever his trial from that of his co-defendants.[11] We find no basis for reversal.

Mathis made a pre-trial verbal motion to sever his trial from that of his co-defendants on the sole ground that their defenses were antagonistic. At the hearing, Mathis's counsel stated that he believed, based on his conversations with counsel for the co-defendants, that the co-defendants intended to introduce testimony that Mathis somehow compelled them to commit the charged crimes. Upon hearing that the witnesses the co-defendants intended to call for that purpose had either expressed an unwillingness to testify or had not yet been subpoenaed, the trial court denied the motion to sever.

Mathis had "the burden of making a clear showing of prejudice and a denial of due process in the absence of severance. The trial court has discretion in determining whether severance is necessary and that determination will not be set aside unless there is an abuse of that discretion."[12] "Antagonism between co-defendants is not enough in itself to require severance, rather [Mathis] must also demonstrate that he was harmed by the failure to sever."[13] Mathis does not specifically allege that he was harmed by the trial court's denial of his motion to sever. And in light of the evidence presented at trial from sources other than his co-defendants — including (1) Jackson's testimony that Mathis discussed the robbery, stole the stockings used in the robbery, and actually went into the bank and emerged shortly thereafter with money; (2) Dean and Hand's identification of Mathis as the man who brandished the gun during the robbery; and (3) Mathis's possession of approximately $7,100 in cash on his person when he was apprehended in the area the day following the robbery — we conclude that Mathis "has not shown the clear prejudicial harm necessary to overturn the trial court's denial of the

---

[10] (Citation omitted.) *Johnson*, 266 Ga. App. at 900 (2).

[11] Mathis's brief does not contain citations to the record to show that he moved to sever his trial or that the trial court ruled on such a motion. We remind counsel that "Court of Appeals Rule 25 (c) ([2]) provides that each enumerated error must be supported in the brief by specific reference to the record or transcript. As we have reiterated time and time again, this Court will not cull the record in search of error on behalf of a party." (Punctuation omitted.) *Gardner v. State*, 289 Ga. App. 359, 360 (657 SE2d 288) (2008). Nevertheless, because the State concedes that the trial court denied Mathis's motion to sever, we exercise our discretion to review this argument on the merits.

[12] (Citation and punctuation omitted.) *Thomas v. State*, 274 Ga. 156, 158 (2) (549 SE2d 359) (2001).

[13] (Punctuation omitted.) *Rivers v. State*, 283 Ga. 1, 4 (2) (655 SE2d 594) (2008).

motion to sever."[14]

Mathis further argues, for the first time on appeal, that the number of defendants created confusion of the evidence and the law and that the admission of letters from Fortie (who did not testify) to Jackson that incriminated Mathis mandated severance.[15] But Mathis has not demonstrated that he raised these arguments to the trial court. "Furthermore, it is well settled that this court will not consider issues and grounds for objection which were not raised and passed upon in the trial court," and thus, we will not consider these arguments.[16]

(c) Mathis also contends that his character was improperly injected into evidence by a witness' reference to his prior incarceration and his prior marijuana consumption.

(i) During direct examination, the State asked Jackson what happened after the Buick left the dirt road and ended up back on the highway following the incident, and she replied, "It was a cop, police standing right there. It was a police right there in a truck. And I told them to stop the car, but Doney [Mathis] told [Fortie], don't stop the car, because he wasn't going back to jail."

"[M]ere mention that a defendant has been in jail falls short of placing his character at issue."[17] Moreover, "[w]hen a witness gives a non-responsive answer to a question impacting negatively on the defendant's character, this does not place the defendant's character in issue under OCGA § 24-9-20 (b)."[18] Finally, the statement at issue "was clearly admissible as part of the res gestae even if such evidence incidentally placed [Mathis's] character in evidence."[19] In light of the nature of the statement and the fact that Jackson gave a nonresponsive answer to the prosecutor's question, the trial court did not abuse

---

[14] Id.

[15] In his brief, Mathis summarily contends that the letters from Fortie to Jackson incriminated Mathis. Although he lists the exhibit number for the letters in his brief, Mathis failed to indicate which of the 32 pages of handwritten letters are inculpatory or to specify how they incriminate him. "It is a sound rule of appellate practice that the burden is always on the appellant in asserting error to show it affirmatively by the record. [Mathis] has not met his burden and it is not the function of this court to cull the record on behalf of a party in search of instances of error." (Punctuation omitted.) *Walker v. State*, 296 Ga. App. 531, 537 (2) (b) (675 SE2d 270) (2009). Moreover, based on our review of the letters, we do not find them to clearly inculpate Mathis. See *Metz v. State*, 284 Ga. 614, 617 (2) (a) (669 SE2d 121) (2008) (severance not mandated based on introduction of custodial statements made by a nontestifying co-defendant that did not directly inculpate the defendant); *Wilkins v. State*, 266 Ga. 278, 279 (2) (a) (466 SE2d 592) (1996) (severance not required because the statements of the nontestifying co-defendant did not clearly implicate the defendant).

[16] *Jefferson v. State*, 157 Ga. App. 324, 326 (2) (277 SE2d 317) (1981).

[17] *Taylor v. State*, 272 Ga. 559, 561 (2) (c) (532 SE2d 395) (2000).

[18] (Punctuation omitted.) *Nelson v. State*, 204 Ga. App. 409, 410 (2) (419 SE2d 502) (1992).

[19] *Kellibrew v. State*, 239 Ga. App. 783, 786 (3) (521 SE2d 921) (1999).

its discretion in denying Mathis's motion for mistrial based on this testimony.[20]

(ii) Mathis also maintains that the trial court erred in failing to grant a mistrial after Waller testified during direct examination that he and the co-defendants smoked marijuana while they drove around Macon the night before the bank robbery. But neither Mathis nor his co-defendants made a contemporaneous objection to the question or to Waller's response, nor did they make a timely motion for mistrial.

> By failing to make a timely objection, [Mathis] has waived any objection that might have been made. Moreover, a mistrial will not lie where evidence is admitted without objection[,] and a motion for mistrial not made contemporaneously with the alleged misconduct makes the motion not timely.[21]

(d) Mathis argues that the trial court erred in denying his motion for mistrial on the grounds that his trial was "permented [sic] with both uniformed and plain clothes law enforcement officers such that there was a fog of law enforcement present surrounding [him] in court and going to and from court [to the] extent that it denied [Mathis] due process[ ] and a fair trial." We find no reversible error.

Decatur County Sheriff Wiley Griffin testified at the hearing on the defendants' motions for new trial, explaining that because there were three defendants, the Sheriff's Department "basically tripled [its] security." Sheriff Griffin testified that

> we had individuals in plainclothes and we had individuals — well, they wore badges even though they were in suits and plainclothes, they still wore badges. And then we had people in uniform, some with guns, some not with guns. And then also we had people in plainclothes that were deputies of Decatur County and Mitchell County Sheriff's Office but were not — the public couldn't tell you that. And, basically, we also had uniformed men around the [d]efendants that basically their job to be [sic] sort of like a circle around those [d]efendants but they did not wear guns.[22]

---

[20] See *Taylor*, 272 Ga. at 561 (2) (c); *Kellibrew v. State*, 239 Ga. App. at 786 (3); *Nelson*, 204 Ga. App. at 410.

[21] (Citations and punctuation omitted.) *Garner v. State*, 180 Ga. App. 146, 147 (1) (348 SE2d 690) (1986). See also *Gant v. State*, 291 Ga. App. 823, 826 (2) (662 SE2d 895) (2008); *Sweeney v. State*, 233 Ga. App. 862, 865 (4) (506 SE2d 150) (1998).

[22] The record does not indicate precisely how many officers were present in the courtroom.

While in court, the defendants wore "street clothes" with stun belts underneath their clothing; the stun belts were not visible. There was no evidence that they were handcuffed or shackled while in the courtroom.

After court was in recess each day, the defendants changed into their orange jail uniforms and were shackled, with restraints on their ankles and their wrists. They were then led out of the courthouse one at a time and into patrol cars that transported them to the jail. Counsel for Fortie characterized the police escort as a "motorcade of one [d]efendant per car." He also testified that there was a police dog on the scene as well. During the trial, counsel for Fortie advised the trial court that Fortie *"believe[d]* that he saw one of the jurors seeing the three defendants led out of the courthouse last night in full shackles, handcuffs, orange jump[ ] suits, the whole bit."[23] However, because none of the defendants requested that the juror be questioned about what she might have seen, the trial court did not so inquire.

Sheriff Griffin testified that the trial in this case occurred "shortly after" the Brian Nichols courthouse shootings in Atlanta. He further stated that monitored telephone calls made by the defendants — including one where a defendant threatened to "light this motherf____r up" — raised security concerns for the trial, including the possibility of an escape attempt. One of the defendants physically assaulted an officer at the jail, and Griffin described one defendant as "very aggressive" toward jail physicians. Griffin was also concerned about the mental stability of the defendants, including one who required medical attention after mutilating his own genitals.

> Although it is well settled that a defendant is entitled to a trial free of partiality which the presence of excessive security measures may create, it is also as well established that the use of extraordinary security measures to prevent dangerous or disruptive behavior which threatens the conduct of a fair and safe trial is within the discretion of the trial court.[24]

Under the circumstances of this case, particularly given the security concerns regarding the three defendants on trial, we cannot say that the trial court abused its discretion in denying Mathis's motion for

---

[23] (Emphasis supplied.)
[24] *Young v. State*, 269 Ga. 478, 479 (2) (499 SE2d 60) (1998).

mistrial on the grounds asserted.[25]

(e) Finally, Mathis argues that the trial court erred in conducting his trial before his court-ordered mental evaluation was completed. We disagree.

At a pre-trial hearing held on June 13, 2008, Mathis's attorney stated that the mental evaluation of Mathis — which was ordered by the trial court on April 25, 2006 — had not been completed. As a result, he was not prepared to announce ready for trial. The trial court advised that it had granted Mathis a continuance during the previous term of court because the evaluation had not been completed and that it had specifically instructed counsel for Mathis that he was responsible for ensuring that the evaluation was completed before the next term of court. The trial court therefore stated that it would not continue the trial.

It is well settled that "a motion for continuance is addressed to the sound discretion of the trial judge, and the refusal to grant a continuance will not be disturbed by the appellate courts unless it clearly appears that the judge abused his discretion in this regard."[26] Here, counsel for Mathis was clearly instructed to ensure that the evaluation was completed, and he failed to do so. Further, Mathis fails to point to any evidence in the record demonstrating that he was incompetent, and we have found none. Under these circumstances, we hold that the trial court did not abuse its discretion in refusing to continue the trial for the completion of Mathis's competency evaluation and no basis for reversal.[27]

## Case No. A09A0308

2. Fortie contends that the trial court erred in allowing his character into evidence in several instances. We find no reversible error.

(a) Fortie alleges that the trial court erred in: allowing an excessive number of law enforcement officers in the courtroom; allowing a "large and conspicuous police presence during the transportation" of Fortie to and from the courthouse; and in failing to remove a juror who allegedly saw him in shackles. For the same reasons set forth in Division 1 (d), this argument affords Fortie no relief.

---

[25] See id.; *Brown v. State*, 240 Ga. App. 321, 323-324 (2) (523 SE2d 333) (1999); *Thrasher v. State*, 204 Ga. App. 413, 414 (3) (419 SE2d 516) (1992). Compare *McKenzey v. State*, 138 Ga. App. 88, 90 (1) (b) (225 SE2d 512) (1976) (physical precedent only) (judgment reversed because the jury saw the defendant — who presented no apparent security risk — in handcuffs and the trial court did not instruct the jury that the fact that he was handcuffed was to have no bearing on its deliberations).

[26] *Campbell v. State*, 231 Ga. 69, 74 (2) (200 SE2d 690) (1973).

[27] See id.; *McCrary v. State*, 274 Ga. App. 5, 6 (2) (616 SE2d 222) (2005).

(b) Fortie further contends that the trial court erred in allowing testimony that he smoked marijuana the night before the robbery. As did Mathis, Fortie waived this argument by failing to contemporaneously object to the testimony or to make a timely motion for mistrial based on its admission.[28]

(c) Fortie also argues that the trial court erred in failing to grant a mistrial when, "after admonishing the [S]tate not to go into anything that would involve testimony from a co[-]defendant who didn't testify[,]" a witness for the State "went into a plan to commit armed robbery." Because he failed to support this assertion with cogent argument or citation of authority or to cite to the record to demonstrate where the purportedly improper testimony was admitted, we will not consider it.[29]

(d) Fortie also alleges that "[a] sequestered witness passed inherently prejudicial newspaper photographs of the [d]efendants around the witness room." Frank Green, an investigator who had already testified for the State, testified that while he was in the sequestered witness room, Emma Wright — a witness who did not testify at trial — showed him a newspaper article that contained a small photograph of Mathis.[30] Although Wright also had "pictures of her car," it is not clear whether she circulated them. After Wright spoke to a third witness, an FBI agent in the room instructed them not to discuss the case. According to Green, the bank employees who identified the defendants had already testified, and they were not present in the witness room at that time.

"The trial court has discretion to grant or deny a motion for mistrial based on an alleged violation of a sequestration order."[31] Here, where there was no evidence that a testifying witness saw the article or any photographs before his or her testimony, Fortie has not shown any harm resulting from the alleged violation, and thus the trial court did not abuse its discretion in denying the motion for mistrial on this basis.[32]

---

[28] See Division 1 (c) (ii).

[29] See *McBee v. State*, 296 Ga. App. 42, 46 (2) (b) (673 SE2d 569) (2009); *Slmbey v. State*, 288 Ga. App. 717, 718 (655 SE2d 223) (2007; Court of Appeals Rule 25 (a) (1) ("[t]he brief of appellant shall . . . contain . . . the citation of such parts of the record or transcript essential to a consideration of the errors complained of"); Court of Appeals Rule 25 (a) (3) ("[t]he brief of appellant shall . . . contain the argument and citation of authorities"); Court of Appeals Rule 25 (c) (2) ("[a]ny enumeration of error which is not supported in the brief by citation of authority or argument may be deemed abandoned").

[30] Thus, contrary to Fortie's assertion in his brief, there is no evidence that the witness circulated photographs of any defendant except for Mathis.

[31] *Scott v. State*, 227 Ga. App. 900, 903 (5) (490 SE2d 208) (1997).

[32] See id.; *Owens v. State*, 213 Ga. App. 693, 694 (2) (445 SE2d 818) (1994) (trial court did not abuse its discretion in denying a mistrial on the grounds that a witness violated the rule of sequestration because defendant failed to show harm resulting from such violation).

3. Fortie also challenges the trial court's denial of his motion to sever. We discern no abuse of discretion.

At the hearing on his motion to sever his trial from that of his co-defendants, Fortie argued that their defenses were "antagonistic to each other and likely to confuse the jury."[33] On appeal, Fortie specifically alleges that because of Mathis's apparent defense of mistaken identity and Waller's defense of coercion, Fortie's defense of coercion "was likely 'lost in the noise,' and severely prejudiced by the sheer unbelievability [sic] of the other two defenses."

> It is incumbent upon the defendant who seeks a severance to show clearly that he will be prejudiced by a joint trial, and in the absence of such a showing, the trial court's denial of a severance motion will not be disturbed. Even when the evidence of one defendant's guilt is stronger than that against the other, it is not error to deny a severance when there is evidence that the defendants acted in concert.[34]

And as we explained in Division 1 (b), supra, "[a]ntagonism between co-defendants is not enough in itself to require severance, rather [Fortie] must also demonstrate that he was harmed by the failure to sever."[35] In light of the evidence presented at trial — including (1) testimony from Jackson (who was not a defendant) that Fortie discussed the robbery, stole the pellet gun used in the robbery, exited the car and peered into the bank minutes before the robbery, and drove the get-away car; and (2) that Fortie was apprehended shortly after the robbery in a car with Waller and Jackson, which contained multiple money wrappers bearing the Family Bank stamp — we conclude that Fortie "has not shown the clear prejudicial harm necessary to overturn the trial court's denial of the motion to sever."[36]

4. In his final enumeration, Fortie contends that he received ineffective assistance of counsel.

> To prevail on a claim of ineffective assistance of counsel, "a defendant must establish, pursuant to *Strickland v. Wash-*

---

[33] Fortie alleges for the first time on appeal that the number of defendants created confusion of the law and the evidence, and that the admission of evidence admissible against one defendant was improperly considered against him. As we held in Division 1 (b), Fortie's failure to demonstrate that he raised these arguments before the trial court precludes our review thereof.

[34] (Citation and punctuation omitted.) *Wallace v. State*, 267 Ga. App. 801, 804-805 (2) (600 SE2d 808) (2004).

[35] (Punctuation omitted.) *Rivers*, 283 Ga. at 4 (2).

[36] Id.

*ington*,[37] that counsel's performance was deficient and that the deficient performance was prejudicial to the defense." We review the trial court's legal conclusions on this issue de novo, and its factual findings for abuse of discretion. An insufficient showing on either the deficiency or prejudice prong will support the trial court's conclusion that there was no ineffective assistance.[38]

Fortie does not allege that he was prejudiced by trial counsel's allegedly deficient performance, and therefore, under the *Strickland* test, his claim for ineffective assistance of counsel fails.

Instead, Fortie contends that he experienced a constructive denial of counsel, permitting him to rely on a presumption of prejudice pursuant to *United States v. Cronic*.[39] In *Cronic*, the United States Supreme Court recognized that circumstances may exist such that, "although counsel is available to assist the accused during trial, the likelihood that any lawyer, even a fully competent one, could provide effective assistance is so small that a presumption of prejudice is appropriate without inquiry into the actual conduct of the trial."[40] However, "constructive denial is not present unless counsel entirely fails to subject the prosecution's case to meaningful adversarial testing. The attorney's failure must be complete and must occur throughout the proceeding and not merely at specific points."[41]

Here, in support of his claim that he received a constructive denial of counsel, Fortie alleges:

> [T]he strained relationship between counsel, [the trial c]ourt[,] and client was evident. From the failure to request that voir dire be recorded and ensure that the voir dire oath was properly administered under OCGA § 15-12-132;[42] to the failure to object to the lead witness remaining in the courtroom after sequestration; to the critical failure of obtaining an expert to show that all the letters in Exhibit #52 were not written by the same hand, the failures

---

[37] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[38] (Citation and footnotes omitted.) *Crane v. State*, 294 Ga. App. 321, 323 (1) (670 SE2d 123) (2008).

[39] 466 U. S. 648 (104 SC 2039, 80 LE2d 657) (1984).

[40] Id. at 659-660.

[41] (Citations and punctuation omitted.) *Turpin v. Curtis*, 278 Ga. 698, 699 (1) (606 SE2d 244) (2004).

[42] At the hearing on his motion for new trial, Fortie specifically withdrew his argument regarding the oath to the jurors. Thus, we are puzzled by his inclusion of this issue in his appellate brief, given his clear abandonment of the argument below.

multiplied exponentially the errors set forth in [the other sections] of [his] brief. Such actions are antithetical to the "zealous and active" defense envisioned by the Sixth Amendment or the level playing field envisioned by the Fourteenth Amendment.

"As in *Cronic*, [Fortie] has not demonstrated a breakdown in the adversarial process that would justify a presumption that his conviction was insufficiently reliable to satisfy the Constitution."[43] The deficiencies that Fortie alleges — failure to obtain an expert and failure to object to a witness remaining in the courtroom following sequestration — are "precisely the type of shortcomings that courts routinely subject to a prejudice analysis."[44]

### Case No. A09A0358

5. Waller alleges that the trial court erred in failing to instruct the jury on his sole defense of coercion and duress. We agree.

Under OCGA § 16-3-26, which defines the defense of coercion,

[a] person is not guilty of a crime, except murder, if the act upon which the supposed criminal liability is based is performed under such coercion that the person reasonably believes that performing the act is the only way to prevent his imminent death or great bodily injury.

Coercion is an affirmative defense.[45] In order to establish an evidentiary basis for a statutory affirmative defense, the defendant must admit all of the elements of the crime charged except intent.[46]

Here, the evidence supported a jury instruction on coercion. Waller admitted at trial that he exited the car, donned a stocking on his head, entered the bank, remained there while Mathis wielded a gun and demanded money from the teller, and then got into the getaway car. By such testimony, Waller has admitted the elements of

---

[43] (Punctuation omitted.) *Lyons v. State*, 271 Ga. 639, 640 (2) (522 SE2d 225) (1999).

[44] (Punctuation omitted.) *Crane*, 294 Ga. App. at 324 (1) (a). See also *Peeler v. State*, 286 Ga. App. 400, 403 (2) (a) (649 SE2d 775) (2007) (applying *Strickland* test to claim of ineffective assistance of counsel based on trial counsel's failure to obtain an expert); *Bolick v. State*, 244 Ga. App. 567, 571 (1) (e) (536 SE2d 242) (2000) (applying *Strickland* test to claim of ineffective assistance of counsel based on trial counsel's failure to object to the State's request to allow a detective to remain at the prosecution table after the rule of sequestration was invoked).

[45] See OCGA §§ 16-3-26; 16-3-28; *Olarte v. State*, 273 Ga. App. 96, 101 (2) (d) (614 SE2d 213) (2005).

[46] See *Manders v. State*, 281 Ga. App. 786, 790 (3) (637 SE2d 460) (2006); *Olarte*, 273 Ga. App. at 101 (2) (d).

armed robbery as a party to the crime.[47] Since Waller testified that he committed such acts because Mathis pointed a gun at him and threatened to shoot him or his family, he was entitled to a jury charge on coercion, and the trial court erred in failing to so instruct the jury, even in the absence of a request by Waller.[48] And we cannot conclude that the failure to give the charge was harmless.[49] Accordingly, we reverse Waller's conviction.

6. Based on our holding in Division 5, we do not address Waller's remaining enumerations.

*Judgments affirmed in Case Nos. A09A0215 and A09A0308. Judgment reversed in Case No. A09A0358. Blackburn, P. J., and Adams, J., concur.*

DECIDED JULY 31, 2009 —
RECONSIDERATION DENIED AUGUST 24, 2009.

*Gilbert J. Murrah*, for appellant (case no. A09A0215).
*Little, Crumly & Chambliss, Samuel F. Little, Jr.*, for appellant (case no. A09A0308).
*Sheueli C. Wang, James C. Bonner, Jr.*, for appellant (case no. A09A0358).
*Joseph K. Mulholland, District Attorney*, for appellee.

---

[47] See OCGA § 16-2-21 ("[a]ny party to a crime who did not directly commit the crime may be indicted, tried, convicted, and punished for commission of the crime upon proof that the crime was committed and that he was a party thereto"); *Cox v. State*, 293 Ga. App. 98, 100 (1) (666 SE2d 379) (2008).

[48] See *Wilson v. State*, 255 Ga. App. 497, 499 (2) (565 SE2d 847) (2002) ("a trial court is required to charge the jury on the defendant's sole defense, even without a written request, if some evidence has been presented to support the charge").

[49] See *McBurnette v. State*, 236 Ga. App. 398, 399 (512 SE2d 298) (1999).